**BOWEN v. NEW YORK LIFE INS. CO.**

No. 11855.

Circuit Court of Appeals, Eighth Circuit.

Feb. 11, 1941.

Rehearing Denied March 11, 1941.

J. L. London, of St. Louis, Mo. (Leahy, Walther & Hecker, of St. Louis, Mo., on the brief), for appellant.

James C. Jones, Jr., of St. Louis, Mo. (James C. Jones and Lon O. Hocker, both of St. Louis, Mo., Louis H. Cooke, of New York City, and Jones, Hocker, Gladney & Grand, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a summary judgment in favor of the New York Life Insurance Company in an action brought by the appellant to recover double indemnity for the accidental death of the insured under a policy of life insurance issued by the Company in 1924. The case was submitted to the court upon a motion for judgment, under Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, based upon the pleadings and a stipulation of facts.

The policy in suit was dated April 23, 1924, and was issued to John E. Bowen, then a resident of Centralia, Illinois, and a soliciting agent of the New York Life Insurance Company at that place. The application for the policy, accompanied by a check for the first premium, was sent by the applicant from Centralia to the Clearing House office of the insurer in St. Louis, Missouri. The check was accepted and deposited by that office, and the application was forwarded to the Home Office of the Company in New York. The Company accepted the application and forwarded the policy to its Clearing House office in St. Louis for delivery to the insured. That office mailed the policy to the insured, who received it at Centralia.

The policy provided for double indemnity in case of accidental death. It contained a provision that the double indemnity clause would not apply "if the insured's death resulted from self-destruction, whether sane or insane." The insured committed suicide February 3, 1934. The Company paid the face of the policy, but denied liability for double indemnity. The appellant, who was the beneficiary named in the policy, then brought this action.

Missouri has a statute, commonly referred to as "the Missouri Suicide Statute", which provides (§ 5740, R.S. Missouri 1929, Mo.St.Ann. § 5740, p. 4385): "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." The effect of this statute upon any policy to which it applies is to make the suicide of the insured while in-

sane an accidental death, any provision of the policy to the contrary notwithstanding. Brunswick v. Standard Accident Ins. Co., 278 Mo. 154, 213 S.W. 45. The State of Illinois, in which the insured resided at the time of the issuance of the policy, and the State of New York, in which the insured's application was accepted, have no such statute, and in those states a provision excepting from the coverage of the policy death by suicide, whether the insured was sane or insane, is valid.

The action of the appellant is based upon the claim that the insured committed suicide while insane, and that the Suicide Statute of Missouri applies to the policy because it became a contract in Missouri when the Clearing House office of the insurer at St. Louis delivered it to the insured by placing it in the United States mail directed to the insured at Centralia, Illinois. The insurer denies that the policy is a Missouri contract, and asserts that the Missouri Suicide Statute is inapplicable in any event.

The parties entered into a stipulation of facts, and, upon that stipulation and the pleadings, the defendant moved for summary judgment. The stipulation indicates that it was the intention of the parties that the court should, upon the motion for summary judgment, determine all issues except the issue whether the insured was sane or insane when he committed suicide. The concluding paragraph of the stipulation is: "It is understood and agreed by the parties hereto that if the motion of the defendant for summary judgment is overruled, the case will then be set down for trial on the issue as to whether the insured was sane or insane at the time of his death, with right of either party to ask for a jury."

The stipulation also contains the following: "It is the contention of the plaintiff that the insured, John E. Bowen, committed suicide while insane and that the double indemnity benefit of the policy applies. The defendant admits that the insured committed suicide, but denies that he was insane and contends that the double indemnity benefit does not apply."

It is clear, therefore, that if the pleadings and the stipulation of facts showed that the plaintiff had a cause of action, assuming that the insured committed suicide while insane, the motion for summary judgment was to be denied; but that if the facts shown were insufficient to establish a

cause of action against the defendant, assuming the death to have been suicide while insane, a summary judgment was to be entered for the defendant.

The court below, being of the opinion that the facts stipulated showed that the policy was executed in New York at the time the application of the insured was accepted, and that the Suicide Statute of Missouri was therefore inapplicable, entered judgment for the defendant. See Bowen v. New York Life Ins. Co., D.C., 33 F.Supp. 705.

The insurer contends that the Missouri statute does not apply to this policy for two reasons: (1) That the statute applies only to a policy issued in Missouri to a citizen of Missouri, and that the insured was shown to be a citizen of Illinois, and was not shown to be a citizen of Missouri; (2) that the policy was not a Missouri contract, but was either a New York or an Illinois contract, to which the Missouri statute was not applicable. If the insured's first contention is sustained, it will be unnecessary to consider the second.

■ The plaintiff did not allege that the insured was a citizen of Missouri. She alleged that the policy was delivered in the State of Missouri and was governed by its laws. The stipulation of facts shows that on April 23, 1924, and for some time prior and subsequent thereto, the insured resided at Centralia, Illinois, and was a soliciting agent of the insurer at that place. It further shows that the insured applied for the policy at Centralia, was examined at Centralia, sent the application from Centralia, and received the policy in Centralia. There are no facts or circumstances contained in the pleadings or the stipulation of facts from which it could be inferred that the insured was a citizen of Missouri at the time the policy in suit was issued and delivered. The stipulation states that the insured and his wife were residents of St. Louis, Missouri, from and after October, 1932, and were residing there at the time of the insured's death, which occurred in Carterville, Illinois.

If any inference were to be drawn from the facts stipulated, it would have to be that the insured was, at the time of the execution of the policy, a citizen of Illinois. Shelton v. Tiffin, 6 How. 163, 185, 12 L.Ed. 387; Sharon v. Hill, C.C., 26 F. 337, 342; In re Person's Estate, 146 Minn. 230, 178 N.W. 738, 739, but compare Harding v. Standard Oil Co., C.C., 182 F. 421.

■ The statute of Missouri upon which the plaintiff relies refers to "policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state."

The plaintiff does not say that the insured was a citizen of Missouri, but she argues that the fact that the insured was a resident of Illinois does not conclusively prove that he was a citizen of Illinois. This, of course, is true. But if the Missouri statute does not apply to Missouri policies issued to insureds who are not citizens of Missouri, then in order to avail herself of the statute, the plaintiff was required to establish that the policy in suit was executed in Missouri and that it was issued to a citizen of Missouri.

■ The construction of a state statute by the highest court of the state is binding upon the federal courts. Trapp v. Metropolitan Life Ins. Co., 8 Cir., 70 F.2d 976, 979, and cases cited. The statute here involved has been construed by the Supreme Court of Missouri in Lukens v. International Life Ins. Co., 269 Mo. 574, 191 S.W. 418. That court said of this statute (page 421 of 191 S.W.): "The section, when correctly construed, is but an inhibition against making insurance contracts in this state and with citizens of this state whereby the insurer is relieved from liability in the event the insured commits suicide. The only right, privilege, or immunity which it denies is the right to contract that in case of suicide the contract obligation shall not be effective, and this denial or abridgement extends only to the citizens of' this state and insurers while contracting in this state. It does not deny to citizens of other states the right to contract with an insurer that such insurer shall be liable in case of suicide; it merely compels insurance companies when contracting in this state, and with citizens of this state, to eliminate from their contracts a certain provision, at the same time leaving citizens of other states entirely free to make such contracts in relation to the subject-matter as they deem proper." This construction of the statute was followed in Pickett v. Equitable Life Assurance Society, Mo.App., 27 S.W.2d 452, and has apparently not been modified or changed. In view of the plain language of the statute, it would seem that any change would require legislation rather than judicial construction.

The plaintiff contends, however, that this Court should construe the statute as applying to this policy (assuming that it is a Missouri contract) because the insured, as a citizen of a state other than Missouri, was, under Article IV, Sec. 2, of the Constitution of the United States, "entitled to all privileges and immunities of citizens of the several states", and that it would therefore be proper to assume that the legislature of Missouri, in enacting the statute, did not intend to deprive citizens of other states, contracting in Missouri, of any privilege or immunity granted to citizens of Missouri. In our opinion, the Supreme Court of Missouri in the case of Lukens v. International Life Ins. Co., supra, has demonstrated that the statute does not deny to citizens of states other than Missouri any privilege or immunity whatsoever, but that it merely restricts the freedom of its own citizens to contract in Missouri with respect to life insurance.[1]

It is not necessary for us to determine whether the statute as written and as construed by the Supreme Court of Missouri violates the Constitution of the United States. If the statute is unconstitutional, it is, of course, a nullity and the plaintiff cannot avail herself of it. If it is constitutional, it means exactly what the Supreme Court of Missouri says it means and is not applicable to a policy executed in Missouri and thereafter delivered through the mails to a noncitizen of Missouri residing in Illinois. The plaintiff calls our attention to the following language used by the Supreme Court of Missouri in Lukens v. International Life Ins. Co., supra, page 588 of 269 Mo., page 422 of 191 S.W.: "A more interesting and difficult question would arise had this contract been executed within this state and while the insured was within the state's jurisdiction, although not one of its citizens. That part of the federal Constitution which prohibits a state from denying to any person within its jurisdiction the equal protection of its laws would, under such circumstances, become of serious consideration." This language might give us some concern if it appeared from the pleadings or from the stipulated facts that at the time the Clearing house office of the insurer mailed the policy to the insured at Centralia, Illinois, the insured was within the jurisdiction of the state of Missouri. The facts contained in the pleadings and in the stipulation do not show that, at the time the policy was executed, the insured was either a citizen of the state of Missouri or within its jurisdiction. That being so, the plaintiff failed to show that she had a cause of action against the defendant, even if the policy was executed in Missouri and the insured committed suicide while insane.

The court below did not err in granting the defendant summary judgment.

The judgment is affirmed.

---

[1] In Lukens v. International Life Ins. Co., 269 Mo. 574, 586, 191 S.W. 418, 421, the Court said: "It [the statute] but regulates a certain subject-matter between insurers and the citizens of this state without attempting to force such regulations upon others. It is not a natural right of any person, wherever living, to demand of an insurer indemnity against suicide merely because the insurer is willing to give insurance against death from other causes. Absent statutes to the contrary in the place where the contract is made, this is legitimate subject-matter of contract. If the laws of the state where the contract is made do not deprive the parties of the right to limit liability to death from natural or accidental causes, the right to so contract cannot be questioned, and, when exercised, must be respected. If this provision abridges the privileges of any person, it is the citizen of this state who is not allowed, even for a reduced premium rate, to secure a policy of life insurance containing a binding provision against suicide, although the citizens of other states are so permitted, but of this respondent cannot complain, because neither she nor the insured were of the class thus affected."

See, also, opinion of Judge Van Valkenburgh in Wheeler v. Business Men's Accident Ass'n, D.C.Mo., 247 F. 677, 681, in which he said: "This legislation of the state of Missouri does not deal with rights or immunities which are fundamental. In a sense it creates no rights at all. It imposes no affirmative burden upon the citizens of other states from which it relieves the citizens of its own state, such as taxation, unequally and inequitably imposed, would be. In effect it invades and restricts the freedom of contract of its own citizens, and its action in this respect is confined to the terms of the enactment, as is proper in the case of legislation in derogation of the common law and restrictive of the ultimate force and effect of contract provision."