FIRST TRUST & SAVINGS BANK AS ADMINISTRATOR DE BONIS NON OF THE ESTATE OF ROBERT PETERMAN, DECEASED v. UNITED STATES FIDELITY & GUARANTY COMPANY.[1]

June 29, 1923.

No. 23,546.

**Procedure equivalent to leave of court to renew motion.**

1. An order to show cause why a previous order of the court denying a motion to vacate a judgment and permit the defendant to answer should not be vacated, the default removed, and the defendant permitted to answer, is equivalent to leave by the court to renew the first motion.

**Default judgment should be opened if a defense is shown.**

2. Whether a judgment shall be vacated and the defendant permitted to answer is within the sound discretion of the trial court. The action was on a judgment in a proceeding for an accounting against an administrator in the probate court. The defendant suffered the time allowed by statute to elapse by some days without answering, and judgment was entered by default. It overlooked the process served upon the insurance commissioner until the day before default. It showed such excuse as it had. The court denied its motion to vacate the judgment and permit an answer largely upon the ground that it showed no defense. Under such circumstances it is *held* that if a defense is shown the default should be excused, the judgment vacated and an answer permitted.

[1]Reported in 194 N. W. 376.

**No collateral attack on settlement of administrator's account by probate court.**

    3. The probate court has exclusive jurisdiction of the settlement of the account of an administrator, and its judgment in the accounting proceeding is not subject to collateral attack.

**Administrator's surety bound by court's settlement of account.**

    4. The administrator's bond is "conditioned for the faithful discharge of all the duties of his trust according to law." The surety is bound by the probate judgment on an accounting, though not a party to the proceeding.

**Defense warranted vacating default judgment.**

    5. The probate judgment charged the administrator upon his removal with "personal estate omitted from the inventory" in a stated sum, credited him with certain disbursements, and charged him with the difference between the two, being "the amount of the funds and property in his hands belonging to said estate," construed, but it is *held*, in view of the facts stated in the opinion, that in point of substance the defense claimed by the defendant is sufficient to justify a hearing and judicial determination upon it, and that the default judgment should be vacated and an answer permitted.

    From an order of the district court for Winona county, Callaghan, J., denying its motion to be relieved from a judgment entered by default and for permission to answer and defend, defendant appealed. Reversed.

    *Webber, George & Owen*, for appellant.
    *Brown, Somsen & Sawyer*, for respondent.


DIBELL, J.

    This action is brought by the plaintiff, First Trust & Savings Bank of Winona, as administrator de bonis non of the estate of Robert Peterman, to recover of the United States Fidelity & Guaranty Company as surety upon the bond of John R. Leak, a former administrator. Judgment was entered by default on January 17, 1923, in the sum of $10,347.75. On February 2, 1923, the defendant moved to vacate the judgment and for permission to answer. This motion was denied on March 3, 1923. On March 7, 1923, the court

issued an order to show cause returnable March 19, 1923, why the order of March 3, 1923, denying the defendant's motion to be relieved from the default judgment and for leave to answer should not be vacated, the default opened and the defendant permitted to serve its proposed answer and make a defense. This motion was denied by an order dated March 21, 1923. The appeal is from the latter order.

1. The plaintiff first urges that the order should be sustained because there was no leave of the court to renew the first motion, citing Carlson v. Carlson, 49 Minn. 555, 52 N. W. 214. It was there held that well established practice requires that a motion once heard and determined shall not be renewed and the same questions raised except on leave of court first had. Such consent may be given when the motion is brought on for hearing, and it may be evidenced by a recital in the order made on the hearing. Fletcher v. Southern Colonization Co. 148 Minn. 143, 181 N. W. 205. The overruling of an objection to the hearing of the second motion upon the ground that leave was not had is the equivalent of an order granting leave. McLaughlin v. City of Breckenridge, 122 Minn. 154, 141 N. W. 1134, 142 N. W. 134. An order to show cause why certain relief should not be granted is sufficient leave to renew a motion asking like relief previously heard and denied. Goodrich & Terry v. Hopkins & Busy, 10 Minn. 130 (162). That case is this case. The order to show cause was a sufficient grant of leave. It may be noted too that the grounds of the second motion are not precisely those of the first.

2. The summons was served on the insurance commissioner on December 27, 1922. This was good service. The main office of the company is at Baltimore. It had an arrangement with the insurance commissioner that copies of process served should be mailed to its local office in Minneapolis at the time that copies were mailed to Baltimore. Because of a change in the office force this was not done. The summons and complaint were mailed by the commissioner to the home office in Baltimore and in regular course of mail should have reached there within 2 or 3 days. They did not receive attention until January 15, 1923, the day before the time for an-

swering expired. Some one blundered. The company then sent the summons and complaint to the Minneapolis office. Judgment had been entered, and the plaintiff refused the defendant additional time for answering. The first motion was made some days thereafter.

There was negligence on the part of the defendant. Whether a default shall be opened is largely, or as it is sometimes said, almost wholly, within the discretion of the trial court, and its ruling will not be disturbed on appeal except for an abuse of discretion. Gummison v. Johnson, 149 Minn. 329, 183 N. W. 515; Paper, Calmenson & Co. v. Sigelman, 149 Minn. 199, 183 N. W. 136; Standard L. & P. Co. v. Twin City M. S. Co. 138 Minn. 294, 164 N. W. 986.

From the memorandum of the trial court it appears that its exercise of discretion against the defendant was largely because of its view that it did not show that it had a defense. Under such circumstances it is the view of the court that, if the defense of the defendant is sufficient in point of substance to justify a hearing and a judicial determination, the default should be excused and an answer permitted.

The plaintiff's cause of action is based upon the accounting judgment of the probate court entered June 23, 1922. There is involved the nature and effect of such a judgment, the relation to it of a surety not a party to the proceeding for an accounting ,and the construction of the particular judgment entered. These questions we now consider.

3. The probate court settles the account of the administrator, has exclusive jurisdiction to do so, and its judgment is not subject to collateral attack. Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302; Connecticut Mut. Life Ins. Co. v. Schurmeier, 125 Minn. 368, 147 N. W. 246.

4. The administrator's bond is "conditioned for the faithful discharge of all the duties of his trust according to law." G. S. 1913, § 7416. The surety contracts that he will so discharge the duties of his trust and is bound by the judgment of the probate court though not a party to the proceeding. Connecticut Mut. Life Ins. Co. v. Schurmeier, 125 Minn. 368, 147 N. W. 246; Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302.

5. On October 15, 1918, John R. Leak was appointed administrator of Peterman by the probate court of Winona county, and on October 27, 1919, his bond in the sum of $10,000 with the defendant as surety was approved. On April 28, 1922, Leak was removed and the plaintiff was appointed in his stead. On June 23, 1922, the probate court adjusted his account. Under the head of "receipts" it charged him with "personal estate omitted from the inventory * * * $10,178.03." Under the head of "disbursements and credits" were a number of items aggregating $161.82 credited to him. This amount was deducted from the so-called "receipts" leaving, as it is designated in the judgment, "residue on hand for distribution * * * $10,016.21." The account was thus adjusted and allowed as the final account and it was "further ordered that said John R. Leak, as administrator as aforseaid, be and he hereby is charged with the sum of ten thousand and sixteen and 21/100 dollars ($10,016.21), the amount of the funds and property in his hands belonging to said estate." Upon this judgment this action is brought.

The proper construction of the probate judgment is not clear. In construing it we cannot be helped by affidavits. There is ground for argument that the money amounts stated, being "the amount of the funds and property in his hands belonging to said estate," are not dollars and cents which Leak should pay to the new administrator. There is ground for argument that the judgment determines that Leak has property coming within the designation of "personal estate omitted from the inventory," which he should deilver to the new administrator, and that his doing so will satisfy the judgment. It is not clear that the probate court found this amount of money in his possession, or surcharged his account in this sum for negligence in administration. Barring this trouble of construction, the judgment is sufficient as a judgment upon an accounting. Balch v. Hooper, 32 Minn. 158, 20 N. W. 124.

At the best the judgment is imperfect. It cannot be amended by the district court. If it is construed as a determination of the amount stated in money, to be satisfied only by a payment in money, the defendant has no present defense; but in such a case, if in court

with an answer, it could apply for a stay and seek relief, if entitled to any, in the probate court. If the judgment is construed as determining that Leak has personal property and funds which he should turn over to the administrator, the defendant meets the objection that the personal property is not described and that there is no way of satisfying the judgment. Again, if the judgment is so construed, and if the property can be identified which Leak should deliver to the new administrator, the plaintiff may be put in the position of having to accept property of nominal value, without an opportunity to surcharge the administrator's account for negligence, or to show that it was so surcharged when the judgment was entered.

The heart of the litigation may still be for the probate court, or for the district court on appeal. We do not say that either party can at this time obtain relief in the probate court, or the nature of the relief it may ask. The defendant should have leave to interpose his answer. In allowing it the court may impose such money or other terms as are proper, for the surety company has been much at fault, and is receiving a favor. The parties may then determine, each for itself, the advantageous procedure. If they are content to rely upon the probate judgment of June 23, 1922, the effect of that judgment will be for construction by the district court. If the defendant, the surety, desires to go into the probate court in search of relief for which it may reasonably apply, the district court should stay proceedings to permit such action. If the plaintiff, not trusting to the present probate judgment, wishes to apply for relief in the probate court, and there seek to surcharge the account of Leak on the ground of negligence, or wishes to ask other relief there, it should have a like opportunity, and the district court can stay proceedings. If necessary, supplemental pleadings may be allowed. Again, we do not say that it can get relief. It can ask for it, and can have its request passed upon by the district or probate court.

While, as stated before, we cannot use the affidavits in construing the judgment, we may use them in determining whether the defendant has a defense worthy of hearing. In this connection it is noted that the affidavits tend to show that the property designated in the

judgment under the head of "receipts" as "personal estate omitted from the inventory," consisted almost wholly of bonds of the Loudon Coal Mines, of Illinois, claimed by the plaintiff to be worthless and by the defendant to be of value. One Loudon was guardian of Peterman, who was an incompetent, for many years prior to his death. He sold his land for something like $11,000. He invested $10,000 in Nevada Short Line bonds. He exchanged these bonds for $10,000 of the bonds of the Loudon Iron Mines, in which he was interested. This was apparently done after Peterman's death. The bonds, with $178.03 in cash, he turned over to Leak. Leak made no inventory. His claims relative to the bonds are not clear. He hedges a little on the question whether he accepted them. This is in part the story of this long neglected estate. If it has been lost Leak or Loudon or both are at the least greatly at fault, and may be guilty of something more.

We do not construe the probate judgment . We have referred to the difficulties of the peculiar situation. When the case comes to trial the parties with their exact knowledge of the facts will be able to present the issues to the court as they claim them. The closing of the estate has been long delayed. The defendant surety should not be much indulged in future proceedings. It has been relieved of the results of serious negligence and should proceed circumspectly without the appearance of unnecessary delay.

Upon the going down of the remittitur the court will enter an order vacating the judgment and permitting the defendant to answer, and, exercising its discretion, it may impose terms.

Order reversed.